CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., Plaintiffs,

v.

SKYLAND LEASING COMPANY, et al., Defendants.

No. G84–232 CA1.

United States District Court, W.D. Michigan, S.D.

Nov. 23, 1987.

---

Russell N. Luplow, Bloomfield Hills, Mich., for plaintiffs.

Geoffrey L. Gillis, Wheeler, Upham, Bryant & Uhl, Grand Rapids, Mich., for defendants.

## OPINION

BENJAMIN F. GIBSON, District Judge.

### I.  INTRODUCTION

Plaintiffs—Central States, Southeast and Southwest Areas Pension Fund; Central States, Southeast and Southwest Areas Health and Welfare Fund ("the Funds"); and Howard McDougall, an individual Trustee of the Funds,—bring this action against defendants Skyland Leasing Company ("Leasing"), Kenneth Keller, and Stephen Van Dyke to collect withdrawal liability allegedly owed the Funds under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multi–Employer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. Sections 1001 *et seq.*  This case has been consolidated with a related action brought by the plaintiffs against the defendants to collect unpaid contributions allegedly due and owing to the Funds pursuant to collective bargaining agreements entered into by the defendants and various local unions of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers ("Teamsters").  This Court has jurisdiction of the subject matter over these actions pursuant to Section 301(a) of the Labor Management Relations Act, as amended, 29 U.S.C. § 185(a), and pursuant to ERISA Sections 502 and 4301, 29 U.S.C. §§ 1132, 1451.  Now before the Court are cross-motions for summary judgment filed by the parties as well as defendants' appeal of a magistrate's Order.

### II.  STANDARD OF REVIEW

To warrant the grant of summary judgment in this case each party bears the burden of establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor.  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 147, 90 S.Ct. 1598, 1603, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device ... Diapulse,* 527 F.2d 1008, 1011 (6th Cir.1976).  In determining whether or not there are issues of fact requiring a trial, "the inferences to be drawn from the underlying facts contained in the affidavits, attached exhibits, and depositions must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425 (6th Cir.1962).  Even if the basic facts are not disputed summary judgment may be inappropriate when contradictory inferences may be drawn from them. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *E.E.O.C. v. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, Local 189,* 427 F.2d 1091, 1093 (6th Cir.1970).  Where the primary issue to be decided is one of statutory interpretation, such motions are particularly suited to summary disposition.

### III.  RELEVANT FACTS

The following facts are undisputed and relevant to a resolution of the controversy before the Court.  Skyland, Inc. ("Skyland") was a Michigan trucking company which executed collective bargaining agreements and participation agreements with various local Teamsters' unions.  The agreements required that contributions be paid to the Central States Pension Fund on behalf of Skyland employees who performed collective bargaining unit work.  Defendants Keller and Van Dyke were the sole shareholders in Skyland and served the corporation as president and vice-president, respectively.  Leasing is a Michigan co-partnership which was formed by Keller and Van Dyke for tax reasons as well as to improve Skyland's balance sheet by shifting certain assets, tractors and trailers, to Leasing.  Leasing then leased the equipment to Skyland for use in Skyland's trucking business.

In the fall of 1980, Mr. Keller was signatory to a contract and participation agreement with Local 34 of the Teamsters' union, ostensibly on behalf of Skyland, but in fact in the name of Leasing.  Although Mr. Keller's authority to sign the agreement on behalf of Leasing is contested, it is undisputed that the purpose of the agreement

was to allow Skyland drivers who were members of the union to participate in a leasing operation between Skyland and Reed Lines, Inc. ("Reed"). It is also undisputed that Keller had authority to bind Skyland to the participation agreement. It is further not disputed that Skyland drivers did in fact perform bargaining unit work in connection with the Reed operation and that those drivers are entitled to pension benefits. The Federal Employer Identification Number listed on the agreements was Skyland's and not Leasing's.

On March 19, 1982, Skyland filed for Chapter 11 bankruptcy. On March 24, 1982, Attorney Geoffrey L. Gillis wrote a letter to the Funds, notifying them that Skyland was in Chapter 11 and asking that he be furnished a statement of the amount payable to the Funds should Skyland be required to withdraw from it. On April 20, 1982, Gillis wrote a second letter to the Funds, informing them of Skyland's own calculation of the withdrawal liability, $21,-000, a *de minimis* amount under ERISA. In response, the Funds notified Gillis that, according to their calculations, Skyland's withdrawal liability was $339,934.73. In this letter, Skyland was referred to as "Skyland, Incorporated a/k/a Skyland Leasing." Account numbers 7346000–0103 and 7346000–0107 were referenced.

In the interim between the Gillis letter and the Funds' reply, Skyland received a May 13, 1982 notice that the Funds were aware that Skyland had ceased to make contributions and that this cessation constituted withdrawal. Following the June 10, 1982 letter, numerous correspondence was exchanged between the Funds and Skyland as well as the Funds and Leasing. The gist of the correspondence was that the Funds had established the amount of withdrawal liability and assessed the amount due against both Skyland and Leasing. On April 7, 1983 a "Notice and Demand for Payment of Withdrawal Liability" was sent to Leasing, not to Skyland, listing one account number only, 73461000–0107. This notice demanded $343,170.98 in withdrawal liability from Leasing. Enclosed with the demand were a billing statement, a minimum payment schedule, a worksheet, and a 14–page document captioned "Rules and Regulations Pertaining to Employer Withdrawal Liability" ("Rules and Regulations").

Keller responded to this notice and demand for payment by letter dated May 2, 1983, advising the Funds that Leasing was not an employer and had never made any contributions to the Teamsters' Funds. The letter challenged the billings to Leasing for the years 1975 through 1979 as erroneous and concluded with the following statement: "Your letter and demand give no basis whatsoever for a withdrawal liability to Leasing. If you feel you have any credible basis for such a claim, please forward that information to us immediately." Although correspondence continued, at no time did anyone on behalf of either Skyland or Leasing avail themselves of the formal review procedures expressly mandated by the Rules and Regulations.

In response to the May 2, 1983 letter, the Funds responded with a letter asserting that the basis for Leasing's liability was the fall 1980 participation agreement signed by Keller and advising Keller that any further questions regarding Skyland's withdrawal liability should be addressed to the Withdrawal Liability Review Committee. No resolution of the dispute was reached, no payments were made, and the Funds filed the instant lawsuit.

## IV. ISSUES PRESENTED

There are four issues presented for resolution in the cross-motions before the Court. The first issue presented concerns the application of 29 U.S.C. Section 1301(b) to the facts of this case. In support of their motion, plaintiffs contend that Leasing is an employer within the meaning of Section 1301(b) and assert that consequently, both Leasing and the individual partners, Keller and Van Dyke, are responsible for the withdrawal liability imposed. Defendants contest the fact that Leasing is an employer within the meaning of the statute and assert that, in any event, defendants Keller and Van Dyke may not be held personally liable for any liability assessed.

The second issue presented for resolution concerns the availability of arbitration in the event Leasing is found to be an employer subject to the provisions of the MPPAA. It is plaintiffs' position that the defendants have waived any right to arbitration by failing to seek review within the prescribed time period. In support of this argument plaintiffs assert that Leasing is a "commonly controlled entity" for purposes of notice and liability and that notice to one control person, either Skyland or Leasing, constituted notice to all within the control group. It is the Funds' position that since notice to at least one control group member was given and no demand for arbitration was made within 120 days, the statutory period for requesting arbitration has expired and the amount of liability assessed may not be contested at this time. Defendants counter with the proposition that, assuming *arguendo* Leasing is liable for Skyland's withdrawal liability, they are not foreclosed from seeking arbitration as to the nature and amount of withdrawal liability assessed, since no notice was given the individual defendants. In addition, defendants assert that they had no duty to arbitrate liability prior to a determination on the issue of whether Leasing was an employer subject to the MPPAA. Defendants further contend that once a determination on the issue is made, they should be allowed to arbitrate their objections to liability assessed in the event Leasing is found to be an employer.

The third issue presented concerns the applicability of 29 U.S.C. Section 1405 to the facts of this case. The plaintiffs contend that the applicability of Section 1404, which allows for mitigation of the amount of liability assessed, is a factual dispute which could have been resolved at arbitration. It is plaintiffs' position that since neither Leasing nor Skyland submitted the issue of mitigation to arbitration, the defendants may not contest the amount of liability assessed on the basis of Section 1405 at this time. Defendants have adopted the position that Section 1405 limits the amount of withdrawal liability that may properly be assessed and assert that this section of the MPPAA should be applied to limit any assessment found due and owing from Leasing, notwithstanding the fact that the issue was not arbitrated.

The fourth and final issue presented for resolution concerns the constitutionality of the MPPAA as interpreted by the Courts and as applied to the facts and circumstances of this case should the arguments advanced by the Funds be adopted. Plaintiffs contend the constitutionality of the MPPAA is, in all respects, well established and that the defendants' constitutional arguments are without merit. In contrast, the defendants allege that the proposed application of the MPPAA is constitutionally infirm in several respects. First, the defendants assert that the plaintiffs failed to provide a fair and complete response to Leasing's inquiries concerning the basis for assessing liability against the partnership and argue that this failure, whether intentional or negligent, constitutes a violation of their procedural due process rights. Second, defendants contend that the notice and demand procedures utilized by the Funds fail to provide adequate notice or a meaningful opportunity to dispute the question of liability. It is defendants' contention that, as a result of these deficiencies, the procedures utilized are arbitrary and violate principles of fundamental fairness. Third, the defendants argue that the MPPAA's imposition of withdrawal liability on "commonly controlled" entities and corporate officers constitutes a taking without just compensation in violation of the Fifth Amendment to the United States Constitution. Finally, the defendants assert that the retroactive application of the MPPAA provisions, if interpreted by the Court in a manner which allows the imposition of liability on unincorporated trades and businesses, constitutes a violation of Fifth Amendment due process rights.

It is the contention of both plaintiffs and defendants that the arguments presented by each are controlling. Each side contends that they are entitled to summary judgment in their favor as a matter of law. The parties have presented extensive evidentiary, statutory and case law support of the arguments presented in their respective

motions. After a review of the pleadings, argument of counsel and relevant evidence presented in support of the various contentions, it is the opinion of this Court that plaintiffs are entitled to summary judgment in their favor for the reasons stated below.

## V. ANALYSIS

As is always the case in litigation involving construction and application of the provisions of ERISA and the MPPAA in determining liability for sums alleged due and owing as a result of the termination of pension plans, the Court has been literally inundated with various legal arguments and case law, purportedly in support of the various legal positions adopted by the parties. As is likewise always the case, the Court has waded through this morass of documents in order to give careful and deliberate consideration to the arguments presented therein. In reaching its conclusion, however, the Court finds that the linchpin issue in this case is primarily an issue of statutory construction. What did Congress intend when it adopted the withdrawal liability provisions of the MPPAA? With this in mind, the Court will proceed to analyze the issue of whether Congress intended to encompass partnerships such as Leasing in its definition of "employer," for purposes of establishing withdrawal liability.

Congress has carefully defined the term "employer" as that term is used throughout ERISA and the MPPAA. For purposes of ERISA, an "employer" means "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). For purposes of the MPPAA, that definition is supplanted by Section 1301(b)(1), which provides in pertinent part:

> [A]ll employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single

employer. The regulations prescribed under the preceding sentence shall be consistent and co-extensive with regulations prescribed for similar purposes by the Secretary of the Treasury under § 414(c) of Title 26.

The Pension Benefit Guaranty Corporation regulation promulgated pursuant to this section, 29 C.F.R. § 2612, incorporates by reference the provisions of section 414(c) of the Internal Revenue Code of 1954 and the regulations issued thereunder. Treasury Regulation § 11.414(c)–2 classifies groups (parent-subsidiary, brother-sister, combined group) that may, according to their relationship with each other or the degree and nature of stock ownership, be found to have been a group exercising common control of employees.

Leasing argues that because it personally had no employees, it may not be held liable for Skyland's withdrawal liability. This argument has been proffered and rejected by the courts on several occasions. *Board of Trustees of the Western Conference of Teamsters Pension Trust v. H.F. Johnson, Inc.,* 830 F.2d 1009 (9th Cir.1987); *Pension Benefit Guaranty Corp. v. Ouimet Corp.,* 470 F.Supp. 945 (D.C.Mass. 1979), *aff'd,* 630 F.2d 4 (1st Cir.1980), *cert. denied,* 450 U.S. 914, 101 S.Ct. 1356, 67 L.Ed.2d 339 (1981). Leasing further argues that the partnership's operation on a "net leasing" basis precludes a finding that Leasing was a trade or business subject to liability as an employer. Leasing's liability for withdrawal contributions does not depend on whether the partnership itself had employees. Nor does the fact that Leasing operated on a "net leasing" basis determine whether liability will be imposed. *Pension Benefit Guaranty Corp. v. Center City Motors, Inc.,* 609 F.Supp. 409 (S.D. Cal.1984). Leasing's status as a member of a common control group with Skyland is the basis for the imposition of liability.

■ The definition of a single employer under 29 U.S.C. Section 1301(b)(1), as refined by Treasury Regulation Section 11.-414(c)–2, imposes liability upon all members of a group subject to "common control." This definition must be read in light of the

statutory purpose for imposing such liability. *In re Challenge Stamping and Porcelain Co.*, 719 F.2d 146, 151 (6th Cir.1983). Its goal is to fix liability upon those who were responsible for continued funding at the time of withdrawal. In determining employer status, mechanical interpretation and application of the relevant provisions of the MPPAA must be avoided to ensure that the statutes' legislative purposes are achieved. The Court is thus required to determine whether, under the facts presented, the imposition of liability on Leasing is constitutionally permissible. *In re Challenge Stamping, Id.* In the instant case, the Court finds that under the circumstances presented, Leasing is an employer within the purview of the statute. It is undisputed that Van Dyke and Keller were the sole shareholders in Skyland and co-partners in Leasing. At all times relevant to this dispute, the principals, Van Dyke and Keller, exercised actual control over both Skyland and Leasing. The activities of both companies were integrally related and both companies subsisted, directly or indirectly, in whole or substantial part, on revenues generated by Skyland's trucking business. All negotiations regarding participation in the Fund were made by either Van Dyke or Keller on behalf of Skyland. At one point, Keller was signatory to an agreement in Leasing's name. Although Keller's authority to enter into the agreement on behalf of the partnership is disputed, it is undisputed that the agreement enured to Skyland and Skyland's employees.

At the time Leasing was formed, both parties were fully aware of Skyland's obligations to the pension fund. In fact, a major portion of said liability was generated subsequent to Leasing's formation and at a time when the defendants should have been fully aware of the potential imposition of control group liability in the context of the MPPAA. The Court finds that under these circumstances, the imposition of "employer" status on Leasing and the resulting liability which attaches as a result of that status is not only equitable but mandated by the statutory language and legislative purposes of the MPPAA. *See Pension*

*Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed. 2d 601 (1984); *Robbins v. Pepsi–Cola Metropolitan Bottling Co.*, 636 F.Supp. 641, 658–660 (N.D.Ill.1986) (Extensive review of Legislative History of Controlled Group Provision); *Central States, Southeast and Southwest Area Pension Fund v. Bellmont Trucking Co., Inc.*, 788 F.2d 428, 433 (7th Cir.1986).

■ Having found Leasing liable for Skyland's withdrawal liability, the Court must determine whether the individual defendants, Van Dyke and Keller, are likewise responsible for the withdrawal liability assessed. Defendants argue that as individuals and corporate officers they may not be held personally responsible for Skyland's liability. In advancing this argument, defendants apparently ignore the fact that the imposition of individual liability, if any, is not based on their status as corporate officers but rather on their status as co-partners in Leasing.

Although the MPPAA contemplates individual withdrawal liability when the employer is a sole proprietorship or partnership, the MPPAA does not expressly mandate such liability. *Board of Trustees v. H.F. Johnson*, 830 F.2d 1009, 1014. In determining whether such liability should attach the underlying purposes of the MPPAA weigh heavily in the decision. While the Court may look to state law for guidance, the question of whether Van Dyke and Keller are liable for Skyland's withdrawal liability is ultimately one of federal law. *Id.* at 1014. In general, absent any limitation in the partnership agreement, partners are personally liable for obligations of the partnership. Uniform Partnership Act § 17. Under Michigan law, the general partners in a partnership likewise are liable for partnership debts. M.C.L.A. § 449.17; *Commonwealth Capital Investment Corp. v. McElmurry*, 102 Mich.App. 536, 302 N.W.2d 222 (1981). Likewise, federal courts addressing this issue in relation to the MPPAA have consistently held that partners are jointly and severally liable for partnership withdrawal liability, even when based on a

"controlled group" theory. *United Food & Commercial Workers Union v. Progressive Supermarkets*, 644 F.Supp. 633, 642 (D.N.J.1986); *Connors v. Calvert Development Co.*, 622 F.Supp. 877 (D.D.C.1985); *Harrison Combs v. Bowling & Hildebrand Trucking Co.*, No. 84–1451 (D.D.C. Feb. 22, 1985). In *Board of Trustees v. H.F. Johnson*, the Ninth Circuit Court of Appeals utilized a "partnership" analysis in imposing withdrawal liability upon the individual participants in a joint venture. 830 F.2d 1009, 1014–15. In each of the above cases, the court found the imposition of liability upon the individual partners or joint venturers consistent with the statutory purposes of the MPPAA which have as their primary concern the protection of vested pension benefits of employees. *See Board of Trustees v. H.F. Johnson, Id.* The Court finds the analyses of these courts persuasive. As a result, the Court likewise concludes that both Van Dyke and Keller are liable for withdrawal payments due and owing.

Based on the clear wording of the statute and the purposes sought to be achieved, the Court finds that Van Dyke and Keller are jointly and severally liable for any withdrawal liability assessed against Leasing. The decision to forego the benefits of incorporation and to establish Leasing as a partnership was "presumptively made for business reasons and for the personal benefit of the [partners]." *See Board of Trustees v. H.F. Johnson, Id.* Van Dyke and Keller are responsible for whatever legal consequences emanate from their choice of business organization. *See Connors v. Calvert Development Co.*, 622 F.Supp. 877, 881 (D.D.C.1985).

■ The requirement that members of a commonly controlled group, such as Skyland and Leasing, be treated as a single employer means that plan trustees can operate as if defendants were one entity. In this respect, the preamble to the regulation, entitled "Notice and Collection of Withdrawal Liability," codified at 29 C.F.R. § 2644, provides:

> [U]nder ERISA there is a unity of interest in the case of a controlled group of corporations, since the entire group is considered to be a single employer for withdrawal liability and other purposes. Therefore, PBGC believes that a notice of default sent to the contributing entity which is a member of a controlled group of corporations, within the meaning of Section 4001(b)(1) [29 U.S.C. § 1401(b)(1)], constitutes constructive notice to the other members of the same controlled group. Thus, PBGC finds that Section 4219(c)(5)(A) [29 U.S.C. § 1401(b)(1)] does not require notice to the other members of a controlled group.

It is clear that notice and demand to one is notice and demand to all within the controlled group. *IUE AFL–CIO Pension Fund v. Barker & Williamson*, 788 F.2d 118, 127–28 (3rd Cir.1986); *Connors v. Calvert*, 622 F.Supp. 877, 881. Defendant's contention that Section 1301(b)(1) should be read to mean that all entities within the control group be afforded the same procedural due process rights as the withdrawn employer and given separate notice of withdrawal liability emasculates the concept of "single employer." *Id.* In any event, it is undisputed that in the present case defendants not only received constructive notice via Skyland, they received actual notice of the withdrawal liability assessment. Thus, any due process notice requirements were met in this case.

Although defendants assert that the basis for the imposition of liability against Leasing was invalid, the notice received was sufficient to advise the defendants that they were subject to liability. If Leasing had pursued its administrative remedy, arbitration of the claim, or challenged the Fund's assessment in federal court prior to the expiration of the statutory time period, it could have contested the basis for liability in a timely manner and preserved any defenses available to Leasing or Skyland. It did not. Instead, Leasing chose to ignore the notice and demand and do nothing. Consequently, liability became conclusively established and the defendants are foreclosed from challenging the amount of liability assessed or the factual basis for im-

posing such liability. 29 U.S.C. § 1401(b)(1).

■ Defendants' failure to exhaust the administrative remedies mandated by the MPPAA does not constitute an absolute bar to federal jurisdiction in this case. *Central States, Southeast and Southwest Areas Pension Fund v. 888 Corporation,* 813 F.2d 760 (6th Cir.1987). Questions involving statutory interpretation rather than factual issues are not within the authority or expertise of an arbitrator. *Id.* at 764. Accordingly, the exhaustion of administrative remedies doctrine does not apply to those aspects of defendants' defenses which are based on pure statutory interpretation. Likewise, there is no exhaustion required when constitutional challenges to the statute are made. *See Republic Industries v. Teamsters Joint Council No. 83 of Virginia Pension Fund,* 718 F.2d 628 (4th Cir.1983).

However, this does not mean that the existence of questions of statutory construction or constitutionality may be used to avoid arbitration of legitimate factual disputes or to prolong the mandatory time period for submitting such issues to arbitration. To allow such dilatory tactics would be contrary to the congressional goals of expeditious handling of pension fund disputes. Accordingly, the Court finds that while questions of pure statutory interpretation or constitutional challenges may not be subject to arbitration, defendants must raise such challenges in federal court prior to the expiration of the statutory period for arbitration or lose the right to raise factual challenges to both the amount of liability assessed and the method of calculating such liability in the event their statutory or constitutional challenges are unsuccessful. *IUE AFL–CIO Pension Fund v. Barker & Williamson,* 788 F.2d at 128–29.

In urging this Court to allow for arbitration of the calculation of withdrawal liability, defendants rely on cases which have remanded disputes for arbitration after resolution of statutory construction and constitutional issues by the courts. However, those cases are easily distinguishable from the facts present here. In each instance, the defaulting employers sought resolution of the legal issues presented prior to expiration of the statutory period for requesting arbitration. In the instant case, there were several options available to Leasing for determination of the legal questions presented while preserving the right to arbitration. *See IUE AFL–CIO Pension Fund v. Barker & Williamson,* 788 F.2d at 128. First, Leasing could have personally requested review and arbitration of the withdrawal liability prior to expiration of the statutory period. *Id.* at 129. Second, Leasing could have sought to compel Skyland to arbitrate the calculation of liability. *Id.* Third, Leasing could have brought a declaratory judgment action to have the legal issues resolved by a federal court. *Id.* In such an action, Leasing could have requested that the court enjoin the running of the statutory period for seeking review and arbitration. It is also possible that the filing of a declaratory action could have automatically tolled the limitations period. Pursuing one of these alternative courses of action would have given Leasing the advantage of preserving review and arbitration while avoiding default. *Id.* If a company fails to follow one of these courses and does nothing, it gambles that it will not later be found a member of a controlled group with the withdrawn employer. It also risks losing the possibility of review and arbitration and risks default in the event its legal challenge is unsuccessful. *Id.* at 129. This is the course that was chosen by Leasing. Consequently, having been unsuccessful in its legal challenge, it is precluded from arbitrating the calculation of withdrawal liability. Although the result seems harsh, it is a "self-inflicted wound." *Id.*

As previously stated, attempts to bypass arbitration should uniformly fail except in narrowly drawn circumstances. *I.A.M. National Pension Fund v. Clinton Engines Corp.,* 825 F.2d 415, 428 n. 23 (D.C.Cir. 1987). The Court finds that in spite of the issue of employer status and the constitutional challenges raised, defendants' failure to initiate arbitration prohibits litigation of factual issues at this time. As a result,

defendants are precluded from litigating the manner of calculation or the amount of withdrawal liability assessed. Defendants argue that notwithstanding their failure to timely request arbitration, Section 1405 of the MPPAA should be applied to limit the amount of liability assessed. Sections 1405(b) and (d) provide that in calculating the amount of withdrawal liability to be assessed, the Funds are to factor in the insolvency of the employer. Defendants request that this Court either decide this issue or remand the issue for arbitration. The Court finds that the availability, via Sections 1405(b) and (d), of a decrease in the amount of liability assessed is a factual dispute integrally related to the total amount of liability assessed by the Funds. This issue should have been timely presented at arbitration. Having failed to timely arbitrate the amount of liability assessed or the manner of calculation, defendants may not challenge, at this late date, any part of the calculation, including relief which may have been available under Sections 1405(b) and (d).

Defendants have raised several constitutional defenses to the imposition of withdrawal liability on Leasing and the individual defendants Van Dyke and Keller. The defendants contend that the withdrawal liability provisions of the MPPAA are in violation of both the Fifth and Seventh Amendments to the Constitution. Because numerous courts have thoroughly considered each of these same challenges or challenges similar in terms of legal analysis, the Court will not engage in such exhaustive discussion here. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601; *United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128 (3rd Cir.1986), *aff'd per curiam by an equally divided Court sub nom. Pension Benefit Guaranty Corp. v. Yahn & McDonnell, Inc.*, — U.S. —, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987) (and cases cited therein); *Robbins v. Pepsi–Cola Metropolitan Bottling Co.*, 636 F.Supp. 641 (and cases cited therein). However, the Court will briefly address these claims *seriatim*, giving additional analysis where indicated.

■ Defendants contend that the controlled group liability provisions of the MPPAA effect a deprivation of property without just compensation and therefore constitute a "taking" in violation of the Fifth Amendment to the Constitution. This claim has been rejected by the Supreme Court in a slightly different context. *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). In *Connolly*, the Supreme Court analyzed the "taking" issue in the context of challenges by two employers who were direct participants in the funding of the pension plans at issue. *Id.* Although not directly on point, the Court's reasoning in upholding the validity of the MPPAA withdrawal liability provisions are equally persuasive in evaluating the controlled group provision at issue here. The Court finds that the decision of the Congress to impose withdrawal liability on members of a "commonly controlled" group is a rational means of addressing the problem of continued funding of pension benefits. The fact that the entity so charged is a partnership does not detract from the reasonableness of the chosen course of action. The Court finds that the imposition of liability upon Leasing and the resulting joint and several liability of Van Dyke and Keller are valid exercises of congressional power in this area. That other courses of action may have been available does not detract from the reasonableness of the solution chosen by Congress. It is not for the Court to second-guess the wisdom of the legislative choice of action.

To the extent that defendants' arguments are premised on the imposition of liability on corporate officers or shareholders, these arguments are irrelevant to the issues before the Court. There has been no imposition of liability on the basis of the individual defendants' status as corporate officers or shareholders. Any liability assessed against Van Dyke and Keller is based on their status as partners in Leasing.

Defendants also challenge the constitutionality of the "presumption of correctness" afforded the calculation of withdrawal liability by the Funds. *See* 29 U.S. C. § 1401(b)(1). It is defendants' contention that the presumption is in violation of their procedural due process rights. As an initial matter, the Court finds that the defendants, having failed to arbitrate the amount of liability assessed, lack standing to assert such a challenge. *See IUE AFL–CIO Pension Fund v. Barker & Williamson,* 788 F.2d at 128. In any event, the Sixth Circuit Court of Appeals has held that the presumption of correctness is not in violation of procedural rights. *Board of Trustees v. Eberhard Foods, Inc.,* 831 F.2d 1258 (6th Cir.1987) (available on WESTLAW, CTA Database). *But see United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.,* 787 F.2d 128.

Other constitutional arguments raised by defendants are equally unpersuasive. The arbitration provisions of the MPPAA do not violate the Seventh Amendment right to trial by jury. *Peick v. Pension Benefit Guaranty Corp.,* 724 F.2d 1247, 1277 (7th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984). The imposition of liability on the individual defendants and Leasing does not offend Due Process notions of fairness. The MPPAA provides methods for the alleviation of the burdens imposed on both companies and individuals. *See Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166. Sections 1405(b) and (d) of 29 U.S.C. provide for diminution of liability in the case of insolvency. The arbitration and review provisions allow parties to challenge the manner and method of calculation of withdrawal liability by the Fund. 29 U.S.C. §§ 1401 *et seq.* Congress has also limited the effects of personal liability on individuals by shielding certain assets from attachment by the judgment creditor. *See* 29 U.S.C. §§ 1405(c), 1451(c). Thus defendants Van Dyke and Keller are not subject to the loss of all their personal property. The fact that one or more of these palliative provisions are no longer available to defendants

are consequences of the defendants' own actions and not the result of any deficiencies in the MPPAA. First, the defendants chose not to seek arbitration in a timely manner. Second, the defendants chose to do business in the partnership rather than corporate form. Any irreparable injury sustained by defendants could have been tempered by different courses of conduct.

## VI. CONCLUSION

For the reasons stated above, the Court finds as a matter of law that plaintiffs are entitled to summary judgment in their favor and that defendants' motion for summary judgment must be denied. Defendant Leasing is a "trade or business" under common control with Skyland and therefore is an "employer" subject to liability under the MPPAA. Defendants Van Dyke and Keller, as co-partners in Leasing, are jointly and severally liable for the obligations of Leasing under both Michigan and federal law. The Court further finds that, as a result of the grant of summary judgment, defendants' appeal of the magistrate's Order is rendered moot.

Defendants will pay the sum of the quarterly withdrawal liability payments which are determined to be due and owing and which are unpaid as of this date. Plaintiffs shall file and serve a certified statement of the amount of withdrawal liability payments due and owing within thirty (30) days of the entry of this Opinion and accompanying Order.

Defendants will pay prejudgment interest on the delinquent withdrawal liability payments from the date said payment was due to the date of this Opinion and Order, calculated in compliance with 29 C.F.R. Sections 2644.1 *et seq.* Plaintiffs shall file and serve, within thirty (30) days of the entry of this Opinion and accompanying Order, a certified statement of the amount of prejudgment interest to be paid.

Defendants will pay liquidated damages on the amount of withdrawal liability payments due and owing as computed in accordance with 29 U.S.C. Section 1132(g)(2). Plaintiffs shall file and serve, within thirty

(30) days of the entry of this Opinion and accompanying Order, a certified statement of the amount of liquidated damages to be paid.