901 F.2d 1514
 12 Employee Benefits Ca 1516
 In re CENTRIC CORPORATION, Debtor.
TRUSTEES OF the CENTENNIAL STATE CARPENTERS PENSION TRUST
FUND, Creditor-Appellant,
v.
CENTRIC CORPORATION, Debtor-Appellee,
U.S. Trustee, Trustee.
CENTRIC CORPORATION, Plaintiff-Appellee,
v.
TRUSTEES OF the CENTENNIAL STATE CARPENTERS PENSION TRUST
FUND; and the Centennial State Carpenters Pension
Trust Fund, Defendants-Appellants.
 Nos. 89-1080, 89-1081.
 United States Court of Appeals,
Tenth Circuit.
 April 23, 1990.
 
 Timothy J. Parsons (David B. Seserman with him on the briefs), Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, Colo., for defendants-appellants.
 Kenneth R. Stettner (Cynthia R. Hanley with him on the brief), Stettner, Miller and Cohn, P.C., Denver, Colo., for plaintiff-appellee.
 Before McKAY, BARRETT, and ANDERSON, Circuit Judges.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 The Trustees of the Centennial State Carpenters Pension Trust Fund ("the Trustees") appeal two orders of the district court. We affirm both.
 
 BACKGROUND
 
 2
 On April 7, 1983, the Trustees notified Centric Corporation ("Centric") that Centric had been found to have withdrawn from the Centennial State Carpenters Pension Trust Fund and was therefore accountable for withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), in the amount of $372,775. See R. Vol. I at Tab 4, Ex. A. The MPPAA requires disputes between a plan sponsor and an employer to be resolved through arbitration, which either party must initiate within 180 days of a request by the employer that the sponsor review specific matters (which must be made within 90 days of the notice), or within 60 days of the sponsor's response to such a request, whichever comes first. 29 U.S.C. Secs. 1399(b)(2), 1401(a)(1). If arbitration is not properly initiated, the assessed liability becomes "due and owing." 29 U.S.C. Sec. 1401(b)(1).
 
 
 3
 On April 29 and July 6, 1983, Centric asked the Trustees to review certain alleged errors in the assessment. When the Trustees did not respond, Centric on December 30, 1983[1] filed suit seeking a declaratory judgment that portions of the MPPAA, including the arbitration requirement, were unconstitutional. The complaint also alleged that, even if the MPPAA was constitutional, Centric had incurred no withdrawal liability because of the exception in 29 U.S.C. Sec. 1398 for suspensions caused by labor disputes. The Trustees counterclaimed for the assessed withdrawal liability. Centric posted a bond sufficient to pay the assessment. In April 1985, the district court ruled against Centric's constitutional claims but held that the applicability of the labor dispute exception could not be determined on a motion for summary judgment.
 
 
 4
 In July 1985, Centric filed a bankruptcy petition. The district court consequently stayed its proceedings and terminated the litigation without prejudice. The Trustees filed a proof of claim in the bankruptcy court for the assessed withdrawal liability, and moved for relief from the automatic stay. The motion was granted on May 13, 1986.
 
 
 5
 In May 1987, Centric objected to a number of the claims filed against it, including the Trustees' claim. Pursuant to a local bankruptcy rule,[2] each party to whose claim Centric objected was notified that if the creditor opposed the objection, a written request for a hearing had to be filed by June 22, 1987 or the bankruptcy court would act on the objection on June 29, 1987. The Trustees admit that they received their notice. Brief of Appellant at 14. Many creditors responded, but not the Trustees. On August 10, 1987, the bankruptcy court resolved the claims of the creditors who responded. The bankruptcy court then approved a plan under which all of Centric's assets would go to its secured creditors, after which the company would be dissolved. The unsecured creditors, including the Trustees, were to receive nothing from the bankruptcy estate.
 
 
 6
 Sometime between June 1986 and January 1988 (the record does not permit greater specificity), the Trustees changed legal counsel. On January 29, 1988, the Trustees, through their new attorney, filed a motion in the district court to reopen those proceedings and a motion in the bankruptcy court for leave to respond to Centric's objection to the Trustees' claim. The district court granted the motion to reopen. On July 14, 1988, the bankruptcy court, which had not formally ruled upon Centric's objection to the Trustees' claim, denied the Trustees' motion to respond to Centric's objection, and disallowed their claim.[3] The Trustees appealed to the district court, which affirmed the bankruptcy court's decision. In a separate order, the district court held that the Trustees' withdrawal liability claim was barred by the doctrine of laches. The Trustees appeal both orders.
 
 DISCUSSION
 I. AFFIRMANCE OF THE BANKRUPTCY COURT
 
 7
 The Trustees were notified that if they opposed Centric's objection to their proof of claim, a written opposition and request for a hearing had to be filed by June 22, 1987. Yet, the Trustees did not try to respond until January 29, 1988--seven months after their opposition was due. The bankruptcy court denied their motion:
 
 
 8
 "This Court is convinced that if it were to allow the response of the Trust Fund to the Debtor's Objection to Claims, which was extremely tardy and which was the product of what is admitted to be simple oversight and neglect, then further unnecessary delay, cost, and disruption to the case is assured....
 
 
 9
 ....
 
 
 10
 To grant the Motion to Respond will, inevitably, cause continuing confusion in an already disputed bankruptcy case, further dissipate an estate already inadequate to allow distribution to unsecured creditors, and send a message to creditors and the bar alike that schedules, timelines, and bar dates are not of importance in bankruptcy proceedings."
 
 
 11
 R. Vol. III, Tab 18 at 3-4.
 
 
 12
 A bankruptcy court may allow a party to act tardily when the failure to act in a timely manner "was the result of excusable neglect." Bankr.R. 9006(b)(1). Courts "have generally not been liberal in granting [such] motions...." 9 L. King, Collier on Bankruptcy p 9006.06, at 9006-16 (15th ed. 1989). The court's decision on a Rule 9006(b) motion shall be reversed only for an abuse of discretion. In re Int'l Coating Applicators, Inc., 647 F.2d 121, 124 (10th Cir.1984).
 
 
 13
 The bankruptcy court tested the Trustees' claim of excusable neglect against the factors identified as relevant by the Ninth Circuit in In re Magouirk, 693 F.2d 948 (9th Cir.1982):
 
 
 14
 "(1) whether granting the delay will prejudice the debtor, (2) the length of the delay and its impact on efficient court administration, (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform, (4) whether the creditor acted in good faith, and (5) whether the clients should be penalized for their counsel's mistake or neglect."
 
 
 15
 Id. at 951.
 
 
 16
 Regarding the first factor, the court found that allowing the Trustees to raise their response to Centric's opposition to their claim after a seven-month delay would prejudice Centric because the debtor was on the verge of executing its plan of liquidation. The effect on a plan which was prepared before the creditor made its motion is a valid consideration under this factor. See In re Standard Metals Corp., 48 B.R. 778, 782 (D.Colo.1985); cf. In re Dix, 95 B.R. 134, 138 (9th Cir. BAP 1988). Further proceedings in the bankruptcy court would both disrupt and diminish the distribution of the estate to Centric's creditors by requiring time and money to litigate the Trustees' claim. Centric would indeed have been prejudiced by the resurrection of litigation in its almost-completed bankruptcy proceeding.
 
 
 17
 The court held that the second factor weighed against the Trustees because delaying the termination of the proceeding would add to the congestion currently plaguing the Bankruptcy Court for the District of Colorado. A delay which hinders "the objective of finality which the fixing of a bar date seeks to establish" has an adverse impact on efficient court administration. In re Standard Metals Corp., 48 B.R. at 788. The premium on finally disposing of a matter is especially high when the court's docket is already overcrowded.
 
 
 18
 The third Magouirk factor--whether the delay was within the creditor's reasonable control--has been interpreted as simply asking whether the creditor had knowledge of his duties. See id. at 789; In re Dix, 95 B.R. at 138-39; In re Figueroa, 33 B.R. 298, 302 (Bankr.S.D.N.Y.1983). Because the Trustees received notice of the deadline, it was within their reasonable control to respond promptly.
 
 
 19
 The bankruptcy court decided that these three factors weighed so "substantial[ly] and compelling[ly]" against the Trustees' motion that, even assuming that the last two factors mitigated in favor of the motion, relief would not be granted. R. Vol. III, Tab 18 at 5. A similar conclusion was reached in In re Standard Metals Corp., 48 B.R. at 789. Moreover, because the Trustees were an unsecured creditor, they would not have collected anything on their claim anyway, so they lost very little (if anything) by being denied the opportunity to respond belatedly to Centric's objection to their claim. The district court correctly determined that the bankruptcy court did not abuse its discretion when it denied the Trustees' motion.
 
 II. DISMISSAL OF THE TRUSTEES' COUNTERCLAIM
 
 20
 A. Laches Is Not Waived by a Failure to Timely Initiate Arbitration
 
 
 21
 Under the MPPAA, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination [of withdrawal liability] shall be resolved through arbitration." 29 U.S.C. Sec. 1401(a)(1) (emphasis added). "If no arbitration proceeding has been initiated pursuant to [section 1401(a)(1) ], the amounts demanded by the plan sponsor ... shall be due and owing ... [and the sponsor] may bring an action ... for collection." 29 U.S.C. Sec. 1401(b)(1). Defenses which should be referred to arbitration are waived by a failure to timely initiate arbitration (unless some exception to the exhaustion-of-remedies doctrine applies). Central States Pension Fund v. Skyland Leasing Co., 691 F.Supp. 6, 14 (W.D.Mich.1987); New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transp. Co., 658 F.Supp. 1469, 1475 (N.D.N.Y.1987), aff'd, 848 F.2d 20 (2d Cir.1988).
 
 
 22
 The Trustees argue that this rule bars Centric from raising any defense to their withdrawal liability claim, but the MPPAA only requires arbitration of disputes "concerning" an assessment of withdrawal liability. Generally, therefore, the only defenses which are waived by a failure to timely initiate arbitration are those which go to the merits of the liability assessment itself. See, e.g., Carl Colteryahn Dairy v. Western Pa. Teamsters & Employers Pension Fund, 847 F.2d 113, 118 (3d Cir.1988) ("how and when withdrawal liability is to be assessed"); Teamsters Pension Trust Fund v. Allyn Transp. Co., 832 F.2d 502, 506 (9th Cir.1987) (" 'the establishment or amount of withdrawal liability' " (quoting Shelter Framing Corp. v. Pension Benefit Guaranty Corp., 705 F.2d 1502, 1509 (9th Cir.1983), rev'd on other grounds sub nom. Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984))); T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, 756 F.2d 939, 945 (2d Cir.1985) ("issues the resolution of which is necessary to calculate withdrawal liability"); Central States Pension Fund v. Skyland Leasing Co., 691 F.Supp. at 14 ("the amount of liability assessed and the method of calculating such liability"); see also Mason & Dixon Tank Lines, Inc. v. Central States Pension Fund, 852 F.2d 156, 164 (6th Cir.1988). Laches in the prosecution of an action to collect the amount assessed is not such a defense, for it goes to the effect of the delay in bringing suit, not to the merits of the claim.
 
 
 23
 Moreover, a failure to arbitrate does not waive a defense that the employer does not yet have. Crown Cork & Seal Co. v. Central States Pension Fund, 881 F.2d 11, 16-17 (3d Cir.1989); see also, e.g., Central States Pension Fund v. 888 Corp., 813 F.2d 760, 764 (6th Cir.1987); Combs v. Leishman, 691 F.Supp. 424, 429 (D.D.C.1988). At the time the Trustees argue Centric should have initiated arbitration, the delay giving rise to the laches defense had not yet occurred.
 
 
 24
 Therefore, whether or not Centric's civil action tolled the time for initiating arbitration, Centric did not lose its right to claim that the Trustees were guilty of laches.
 
 B. The Trustees' Claim Was Barred By Laches
 
 25
 The defense of laches is available in a suit to collect a claim for withdrawal liability. See ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 887 (2d Cir.1988); Central States Pension Fund v. Lloyd L. Sztanyo Trust, 693 F.Supp. 531, 541 (E.D.Mich.1988); Jaspan v. Certified Indus., Inc., 645 F.Supp. 998, 1007 (E.D.N.Y.1985); cf. Trustees of Wyo. Laborers Health & Welfare Plan v. Morgen & Oswood Constr. Co., 850 F.2d 613, 624 (10th Cir.1988); Trustees of Colo. Statewide Iron Workers Fund v. A & P Steel, Inc., 812 F.2d 1518, 1528 (10th Cir.1987) (both considering a laches defense to a claim under ERISA for delinquent contributions to pension funds). But see Robbins v. Pepsi-Cola Metro. Bottling Co., 636 F.Supp. 641, 681 n. 6 (N.D.Ill.1986); Combs v. Western Coal Corp., 611 F.Supp. 917, 920 (D.D.C.1985).[4] The defense is available whether or not the amount assessed has become "due and owing." See Jaspan v. Certified Indus., Inc., 645 F.Supp. at 1005. Laches is just as applicable to a delay in re initiating litigation as it is to a delay in initiating litigation. See Restatement (Second) of Judgments Sec. 20 comment n (1982); cf. In re Whitney-Forbes, Inc., 770 F.2d 692, 698 (7th Cir.1985); Coleman v. Block, 663 F.Supp. 1315, 1329 (D.N.D.1987), vacated as moot, 864 F.2d 604 (8th Cir.1988).
 
 
 26
 After the district court terminated without prejudice the Trustees' counterclaim for withdrawal liability, the Trustees got the bankruptcy court to lift the automatic stay on May 13, 1986. However, it was not until January 29, 1988--over twenty months later--that the Trustees moved to reopen the district court litigation. The district court held that the claim had become barred by laches:
 
 
 27
 "[D]espite the issuance of the order granting relief from stay, thereby permitting the [T]rustees to prosecute their counterclaim in this civil action, the [T]rustees' former legal counsel decided to proceed through the proof of claim filed in the bankruptcy proceedings and then neglected to prosecute that claim in a timely manner. Current counsel for the [T]rustees then discovered that ... a bond had been posted in this civil action to secure payment of withdrawal liability.... Accordingly, the [T]rustees seek to recover on that bond.... [T]he failure of the [T]rustees to prosecute the counterclaim here for more than 20 months after receiving the order granting relief from stay is inexcusable and would cause substantial detriment to the plaintiff by proceeding with the litigation of the counterclaim."
 
 
 28
 R. Vol. I, Tab 20 at 3.
 
 
 29
 "Laches consists of two elements: (1) inexcusable delay in instituting a suit; and (2) resulting prejudice to defendant from such delay." Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 523 (10th Cir.1987). We will not disturb a finding of laches unless the district court abused its discretion. Id.
 
 
 30
 The Trustees claim that, rather than sleeping on their rights, their counsel spent the twenty-month interval trying to work out an amicable settlement. Generally, a delay caused by settlement negotiations is not unreasonable. See, e.g., Stone v. Williams, 873 F.2d 620, 625 (2d Cir.1989); Mogavero v. McLucas, 543 F.2d 1081, 1083 (4th Cir.1976). Unfortunately for the Trustees, this argument appears to be an afterthought. No evidence in the record supports it.[5] We agree with the district court's conclusion that the Trustees have not justified their failure to act.
 
 
 31
 When the plaintiff's conduct is unjustified, the defendant's need to show prejudice eases. Stone v. Williams, 873 F.2d at 625; see Gull Airborne Instruments, Inc. v. Weinberger, 694 F.2d 838, 893 (D.C.Cir.1982). Centric need not show that the delay hindered its defense of the Trustees' claim; prejudice also can flow from outside conditions (in this case, arrangements to liquidate) arising during the hiatus. See, e.g., Lingenfelter v. Keystone Consol. Indus., Inc., 691 F.2d 339, 342 (7th Cir.1982); Independent Bankers Ass'n v. Heimann, 627 F.2d 486, 488 (D.C.Cir.1980). The same prejudice to Centric that the bankruptcy court found under the first Magouirk factor also accrued to Centric from the Trustee's languor in the district court. Further litigation of the Trustees' claim would force Centric to revise its plan of liquidation, and would both delay and reduce the ultimate payments to the secured creditors. We cannot say that the district court's conclusion that Centric was prejudiced was an abuse of its discretion.
 
 CONCLUSION
 
 32
 The district court committed no reversible error. It correctly concluded that the bankruptcy court acted within its discretion when it denied the Trustees leave to respond tardily to Centric's objection to their claim. Nor did the district court abuse its discretion by holding the Trustees' withdrawal liability claim barred by laches, a defense available to Centric even if the time for arbitrating disputes concerning the liability assessment has passed. Both judgments of the district court are AFFIRMED.
 
 
 
 [1]
 Both the April 29 letter and the July 6 letter came within 90 days of the notice of liability. December 30 is 255 days after April 29 and 177 days after July 6, so the question of whether Centric could have timely initiated arbitration on December 30 depends upon whether the 180-day period began with the first letter or the second letter. Because we dispose of the case on different grounds, we need not consider this question
 
 
 [2]
 "Whenever an order is to be entered or other action is to be taken after 'notice and a hearing,' ...:
 ....
 (f) The notice shall state the date action will be taken in the absence of an objection and request for a hearing by an interested party. The notice shall also state that the interested party must file an objection and request a hearing on or before a date certain which shall be no less than four (4) days prior to the date the intended action is to occur.
 (g) Objections and requests for hearing shall be filed with the Court ... [and] shall clearly specify the grounds upon which they are based, including the citation of supporting legal authority, if any. General objections will not be considered."
 D.Colo.Bankr.R. 23(f), (g).
 While this procedure for responding to objections to proofs of claim is not mandated by the Bankruptcy Code or the federal Bankruptcy Rules, it does not conflict with them, so the Trustees are not excused from it. See Bankr.R. 9029; 1 D. Cowans, Bankruptcy Law and Practice Sec. 3.17, at 251 (citing Smith v. Ford Motor Co., 626 F.2d 784, 791 (10th Cir.1980), cert. denied, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981)). Also, because the local rule makes no distinction between contingent and non-contingent claims, we need not address the Trustees' argument that they were not required to file a proof of claim because the liability was fixed.
 
 
 [3]
 In their brief, the Trustees state that the bankruptcy court announced these decisions on June 29, 1988, in an order effective nunc pro tunc August 10, 1987 (the date of the hearing on the claims of the creditors who responded to Centric's objections). The court did issue an order nunc pro tunc on June 29, but that order did not deal with the Trustees' claim. It disallowed the claims of the other creditors who did not timely respond. The June 29 order is completely irrelevant to the Trustees' claim
 
 
 [4]
 These two district courts hold that a withdrawal liability claim cannot be barred by laches because the limitations period in the MPPAA, 29 U.S.C. Sec. 1451(f), is the exclusive time bar for such a claim. In this circuit, however, laches and a statute of limitations are not mutually exclusive, even when the statute has been made specifically applicable to the claim and the claim was brought within the statutory period. Armstrong v. Maple Leaf Apartments, Ltd., 622 F.2d 466, 472 (10th Cir.1979), cert. denied, 449 U.S. 901, 101 S.Ct. 271, 66 L.Ed.2d 131 (1980)
 
 
 [5]
 In fact, the only relevant evidence is an affidavit from Centric's attorney averring that the last settlement discussions took place in 1985. See R. Vol. I, Tab 18 at Ex. 1