**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 9 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

STEVEN J. KADONSKY,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

No. 00-4062
(D.C. No. 98-CV-852)
(D. Utah)

**ORDER AND JUDGMENT** *

Before **EBEL**, **KELLY**, and **LUCERO**, Circuit Judges.

Plaintiff-appellant Steven J. Kadonsky, proceeding pro se, appeals from

the district court's order denying his request for the return of forfeited currency in

the amount of $300,000. That money was the proceeds from a sale of real

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

property in Park City, Utah. We exercise jurisdiction under 28 U.S.C. § 1291 and remand for further proceedings consistent with this order and judgment.

## I.

Kadonsky performed money-laundering services, among other things, for a drug-trafficking organization run by Howard Weinthal. Pursuant to a plea agreement which required him to provide the government with information on Weinthal's organization, Kadonsky pled guilty to drug-related crimes. Beginning in October 1993, government agents interviewed Kadonsky concerning ownership interests in property purchased with drug-trafficking proceeds. Kadonsky also testified before the grand jury in the District of Arizona in February 1994.

Kadonsky detailed the purchase of real property in Park City, Utah. According to a government agent, Kadonsky was informed that the government intended to bring forfeiture proceedings against the property as proceeds traceable to drug purchases. [1] Kadonsky denies being told the government's intention.

Kadonsky testified to the grand jury that, at Weinthal's request, he had arranged for the purchase of property with $220,000 in laundered money in the

---

[1]     Property subject to forfeiture includes "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance" and also "all proceeds traceable to such an exchange." 21 U.S.C. § 881(a)(6).

name of Park City Development Limited Partnership. [2] The money was all Weinthal's drug money. He told an agent, however, that he had a 15% interest in the partnership and Weinthal had an 85% interest.

At the time of Kadonsky's testimony, the county recorder's office did not show Park City Development Limited Partnership as the owner of the property. A warranty deed, filed March 17, 1992, evidenced Weinthal's conveyance of the property from Park City Development Limited Partnership to Comanche Nation Ltd. Partnership, an entity controlled by Weinthal and another individual. In an effort to counteract the conveyance, Kadonsky filed a "Notice of Interest" on August 3, 1992. The notice stated that Kadonsky "claims an interest" in the Park City property "by virtue of being the sole owner and general partner of Park City Development Limited Partnership, an unregistered limited partnership." (Appellee's App. at 64.) The filing purported to "give[] notice that except for [Kadonsky], no individuals have been authorized to convey title." ( Id. )

Notwithstanding the 1992 filing of the notice, Kadonsky contends that he learned of his ownership of the property only after his 1994 grand jury testimony. He states that Weinthal told him that "all of the funds used to purchase the Park

_____

[2] According to Kadonsky, the partnership name was registered, but no other paperwork filed. In Utah, a limited partnership is not formed until a certificate of limited partnership is executed and filed with the Division of Corporations and Commercial Code of the Utah Department of Commerce. Utah Code Ann. § 48-2a-201.

City property were, in fact, Kadonsky's earnings from various activities," and therefore Kadonsky was the 100% owner of Park City Development Limited Partnership and the property. (Appellant's Br. at 5.) According to Kadonsky, he informed a government agent of his newly-acquired knowledge and the agent responded that the government already knew that Kadonsky owned the property. The government denies that any such conversation took place.

Less than a month after his grand jury testimony, Kadonsky, from his place of incarceration, arranged for a Utah attorney to represent him in the sale of the property. A buyer was found for the contract sales price of $395,000. To convey clear title, Kadonsky obtained Weinthal's cooperation by agreeing to give him a share of the proceeds. Park City Ltd. Partnership, under Kadonsky's signature, quitclaimed its interests to Comanche Nation Ltd. Partnership which then conveyed the property to the buyer by warranty deed.

Closing was scheduled for June 1, 1994, at which time the seller, Comanche Nation, was to receive $35,765.52 and Kadonsky was to receive $300,000. The title company issued a trust account check to the order of "Steve Kadonsky" in the amount of $300,000. (Appellant's App. at 20.) At closing, the government seized the $300,000 check. Notice of seizure was sent to Weinthal,

but not to Kadonsky at his place of incarceration.  The currency was declared forfeited on September 22, 1994.   [3]

On December 7 of that year, the government commenced a judicial forfeiture action in the United States District Court for the District of Arizona naming Kadonsky and Park City Development Limited Partnership as two of the defendants.   Default judgment was entered on June 27, 1995, declaring that Kadonsky had forfeited all rights in Park City Development Limited Partnership. Kadonsky unsuccessfully attempted to set aside the default and recover the $300,000.   In that action, the government responded to Kadonsky's pleading by stating that the complaint

> include[d] real property in Colorado and Vermont only.  Neither the real property nor any interest in the net sales proceeds from the liquidation of the real property in Utah was a defendant in this action.  No arrest warrant has been served upon the sales proceeds described in Kadonsky's pleading.  This court has no jurisdiction over the res forfeited by the administrative action in Utah.

(Id. at 137.)  The district court refused to re-open the case and consider Kadonsky's claim for return of the currency.  Later, Kadonsky filed pleadings

---

[3]     Administrative forfeiture of property valued at $500,000 or less, furnished or obtained in exchange for a controlled substance, is authorized by statute.  The government is required to send written notice of forfeiture proceedings to each party who may have an interest in the seized property and to publish notice of its intent to seize the property once a week for three consecutive weeks.  A potential claimant then has twenty days in which to file a claim and to post a bond.        See 19 U.S.C. §§ 1607(a), 1608.

-5-

regarding the return of the currency in still another judicial forfeiture action, filed in the Northern District of Texas, that began in August 1997.

Kadonsky initiated the instant action in December 1998 requesting return of the currency on the grounds that his due process right to challenge the administrative forfeiture was violated by the failure to provide him with notice of seizure. The parties filed cross motions for summary judgment. In its order granting the government's motion, the district court determined that Kadonsky could own the property only through his rights in Park City Development Limited Partnership and that those rights were extinguished in the Arizona forfeiture action. The district court therefore entered judgment in favor of the government. This appeal followed.

## II.

Before reaching the merits of this appeal we must first address the government's argument that Kadonsky lacks standing to challenge the forfeiture of the $300,000 in currency. Whether a party has standing to claim property in a forfeiture action is a question of law to be reviewed de novo. See United States v. 5 S 351 Tuthill Rd., 233 F.3d 1017, 1021 (7th Cir. 2000). A claimant must be able to show a "facially colorable" interest in the proceedings sufficient to satisfy Article III standing; otherwise, no constitutional case or controversy exists capable of federal court adjudication. See, e.g., United States v. 1998 BMW "I"

Convertible, 235 F.3d 397, 399 (8th Cir. 2000); Kadonsky v. United States, 216 F.3d 499, 508 (5th Cir. 2000); United States v. U.S. Currency, $81,000, 189 F.3d 28, 35 (1st Cir. 1999).

To contest a civil forfeiture, "the claimant need not prove the full merits of [his] underlying claim." U.S. Currency, $81,000, 189 F.3d at 35 (quotation and citation omitted). Usually, "an allegation of ownership and some evidence of ownership are together sufficient to establish standing." Id. "An ownership interest is evidenced in a number of ways including showings of actual possession, control, title and financial stake." 1998 BMW "I" Convertible, 235 F.3d at 397 (quotations and citations omitted).

The government argues that there are three reasons why Kadonsky lacks standing in this action: (1) Kadonsky's ownership in the Park City property, if any, was through Park City Development Limited Partnership, and his interest in the partnership was forfeited in the Arizona action; (2) Comanche Nation was the record owner of the property; and (3) Kadonsky denied ownership in the Park City property. These arguments share a common flaw. The forfeited property here was a check made out to the plaintiff; it was not the real property or a partnership interest. The payee of a seized check necessarily suffers an injury

that can be redressed by reimbursement for the amount of the check. Kadonsky has standing to contest the forfeiture. [4]

## III.

The government is required to give notice to all persons who have or claim an interest in property that is subject to administrative forfeiture. United States v. Clark, 84 F.3d 378, 380 (10th Cir. 1996); see also 19 U.S.C. § 1607 (providing that "[w]ritten notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article"). Notwithstanding the confusion in record title and the conflict in Kadonsky's statements, it is clear that Kadonsky, at a minimum, "appear[ed] to have an interest" in the check made out in his name. Therefore, under § 1607, he was entitled to receive notice of seizure. It is uncontested that the government did not provide Kadonsky with notice.

The question before us, however, is not whether the government failed to follow the statute. In order to make out a valid claim for return of property a claimant must show the deprivation of an actual property interest, not just the appearance of a property interest. "[F]ederal question jurisdiction pursuant to 28

_____

[4] We have dealt with the government's attack on the validity of Kadonsky's ownership rights in the currency strictly in the context in which they were raised–standing. This court "will not craft" an argument for a party. Perry v. Woodward, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999), cert. denied, 120 S. Ct. 1964 (2000).

U.S.C. § 1331 is available for the limited purpose of considering collateral due process attacks; that is, deciding whether the forfeiture offended due process rights." United States v. Deninno , 103 F.3d 82, 85 (10th Cir. 1996).

"Proceedings surrounding the motion for return of property seized in a criminal case are civil in nature," United States v. Maez , 915 F.2d 1466, 1468 (10th Cir. 1990), and based on equitable principles, see United States v. Madden , 95 F.3d 38, 40 (10th Cir. 1996). Generally, we review a district court's denial of a motion for return of forfeited property for an abuse of discretion. See Deninno , 103 F.3d at 84. However, a de novo standard of review applies to the ultimate conclusion on whether a claimant's due process rights have been violated. See United States v. One Parcel of Real Prop. Described as Lot 41, Berryhill Farm Estates , 128 F.3d 1386, 1391 (10th Cir. 1997).

The district court determined that Kadonsky had no property rights because the Texas forfeiture action had stripped him of his interests in the real property and the partnership. The Texas matter, however, was filed after the sale of the property, after the seizure of the check, and after the forfeiture. Moreover, it is apparent from the government's filings and the court's rulings in the Texas case that the later action had no effect on the property at issue in this case. The district court erred in determining that the judgment entered in the Texas action remedied defects in the administrative forfeiture of the $300,000 check.

-9-

The government essentially concedes the district court's error and argues that the ruling should be upheld on other grounds: Kadonsky was equitably estopped from asserting ownership or, alternatively, that the doctrine of laches bars Kadonsky's suit. These affirmative defenses are potentially valid theories, but their applicability cannot be determined at this procedural juncture. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "'When reviewing cross-motions for summary judgment, 'our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made.'" Pirkheim v. First Unum Life Ins., 229 F.3d 1008, 1010 (10th Cir. 2000) (quoting Andersen v. Chrysler Corp., 99 F.3d 846, 856 (7th Cir. 1996)).

The theory of equitable estoppel has been applied in a forfeiture action, see United States v. 8136 S. Dobson St., 125 F.3d 1076, 1082 (7th Cir. 1997), and is particularly appropriate in an action for return of property, which sounds in

equity, see Madden, 95 F.3d at 40. [5] For equitable estoppel to apply, the party

asserting the defense must show that

> (1) the party to be estopped must know the facts; (2) the party to be
> estopped must intend that his conduct will be acted upon or must so
> act that the party asserting the estoppel has the right to believe that it
> was so intended; (3) the party asserting the estoppel must be ignorant
> of the true facts; and (4) the party asserting the estoppel must rely on
> the other party's conduct to his injury.

N. Tex. Prod. Credit Ass'n v. McCurtain County Nat'l Bank, 222 F.3d 800,

811 (10th Cir. 2000) (quoting Penny v. Giuffrida, 897 F.2d 1543, 1545-46

(10th Cir. 1990)).

In the instant case, the materials submitted by the parties provide sharply

conflicting versions of the facts relevant to each of the four elements. These

issues of material fact preclude summary judgment in favor of the government on

an estoppel theory. It is therefore necessary to remand the matter to the district

court for further proceedings and findings on this issue.

If the district court determines that the government has failed to make an

adequate showing on the defense of equitable estoppel, it must then reach the

government's assertion of a laches defense. The limitations provision for

---

[5]     The related theory of "[j]udicial estoppel bars a party from adopting inconsistent positions in the same or related litigation. However, this circuit has expressly rejected the principle of judicial estoppel." United States v. 162 MegaMania Gambling Devices, 231 F.3d 713, 726 (10th Cir. 2000) (quotations and citations omitted).

forfeiture proceedings requires the commencement of proceedings "within five years after the time the alleged offense was discovered." 19 U.S.C. § 1621. "Where obvious statute of limitations problems exist," a forfeiture void for lack of notice "should be vacated and the statute of limitations allowed to operate, subject, of course, to any available government arguments against it." Clymore v. United States, 164 F.3d 569, 574 (10th Cir. 1999). [6] At the latest, Kadonsky's crimes were discovered in October 1993. "[A]bsent the application of laches or equitable tolling principles," the limitations period has expired to prevent the filing of a new forfeiture proceeding. United States v. Marolf, 173 F.3d 1213, 1218 (9th Cir. 1999).

"'Laches consists of two elements: (1) inexcusable delay in instituting a suit; and (2) resulting prejudice to defendant from such delay.'" Trustees of the Centennial State Carpenters' Pension Trust Fund v. Centric Corp. (In re Centric Corp.), 901 F.2d 1514, 1519 (10th Cir. 1990) (quoting Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 523 (10th Cir. 1987)). Because the laches defense raises

---

[6] The Clymore holding is applicable to the instant case. Congress, however, has significantly amended the civil forfeiture statutes for proceedings commenced after August 23, 2000. See Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, § 2, 114 Stat. 202, 208 (2000). Forfeitures judicially set aside for lack of notice may now be refiled. Id.

considerations similar to those of the equitable estoppel, we leave any determination on the issue to the district court on remand. [7]

## IV.

For the reasons stated above, the judgment of the district court is REVERSED and REMANDED for further proceedings consistent with this opinion.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[7] Kadonsky contends that in the event the $300,000 in currency is returned to him, he is entitled to pre-judgment interest. We have recently rejected this argument. In United States v. 30,006.25 in U.S. Currency, No. 00-5046, 2000 WL 1879124, at *3 (10th Cir. Dec. 28, 2000), we held that, in forfeiture cases commenced prior to August 23, 2000, "sovereign immunity prohibits the award of interest on currency" returned to a forfeiture claimant. For cases filed on or after that date, however, the Civil Asset Forfeiture Reform Act of 2000, "has now waived sovereign immunity with respect to interest on returned currency, negotiable instruments and proceeds." Id. (citing Pub. L. No. 106-185, § 4(a), 114 Stat. 202, 211-13 (2000) (codified at 28 U.S.C. § 2465(b)(1)(C))).

-13-